IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM McKNIGHT, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-0143 |
| | : | |
| McDOWELL, *et al*. | : | |
|     Defendants. | : | |

MEMORANDUM

**GOLDBERG, C.J.**                                                                                         MAY 13, 2024

      Currently before the Court is a Motion for Extension of Time Nunc Pro Tunc and a Prisoner Trust Fund Account Statement filed by Plaintiff William McKnight, a prisoner who seeks to proceed *in forma pauperis* on civil rights claims based on conditions in which he was confined at the Philadelphia Detention Center. For the following reasons, the Court will grant McKnight's motion, reopen this case, grant him leave to proceed *in forma pauperis*, and dismiss the Complaint without prejudice to amendment.

**I.    FACTUAL ALLEGATIONS**

      McKnight alleges that during his confinement at the Detention Center, he was "subjected to very clear and explicit retaliatory treatment by defendant McDowell against whom he has submitted multiple handwritten and electronically filed complaints regarding her inappropriate and improper behavior toward him, among other individuals." (Compl. at 3, ¶ 5.)[1] McKnight alleges that his grievances against McDowell "described various forms of mistreatment and behavior" warranting an administrative investigation. (*Id.* at 3-4, ¶ 6.) McKnight contends that, as a result

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

of those grievances, McDowell "began to secretly harbor animosity toward [him]" as demonstrated by her use of "abrasive and antagonistic language." (*Id.* at 4, ¶ 7.) McKnight contends that McDowell's animosity toward him "culminated in her decision to change his housing location [in November 2023] to a section of the jail deemed considerably less desirable due to the frequency of violent incidents and restricted movement." (*Id.* at 4, ¶ 8 & ¶ 10; *see also id.* at 3-4, ¶ 6 (contending that, in November 2023, McDowell changed McKnight's housing assignment to "a far less desirable housing location" because she "harbor[ed] both hostility and animosity toward [McKnight] due to his prior grievances regarding her inappropriate conduct toward him").) He alleges that the section of the jail to which he was moved "is marked by massive overcrowded conditions" that exposed him "to the likelihood of incidents of assault from other inmates," thereby constituting "reckless indifference toward his health and safety." (*Id.* at 4, ¶ 11.) McKnight notes that, on his prior housing unit, he "enjoyed a double occupancy cell, more physical movement, and an institutional job assignment." (*Id.* at 5, ¶ 16.)

McKnight further alleges that Warden Lacombe either knew or should have known that McDowell "routinely seeks reprisals against inmates who have sought investigative actions into her improper conduct," yet allowed McDowell's actions to continue. (*Id.* at 5, ¶ 13.) In that regard, McKnight claims that McDowell has been the subject of various inmate grievances and that she has also been investigated for alleged violations of the Prison Rape Elimination Act. (*Id.* at 5, ¶ 14.) In support of this allegation, McKnight attached to his Complaint the Declaration of another inmate who claims that he, too, was "involved in multiple complaints" and an investigation of McDowell due to her "sexually obscene and degrading remarks," and that McDowell changed his housing by "falsely asserting" that he had "engaged in threatening behavior toward her." (ECF No. 2-1 at ¶¶ 3-4.)

Based on those allegations, McKnight brings this lawsuit pursuant to 42 U.S.C. § 1983 against McDowell and Lacombe in their individual and official capacities. He asserts a failure to protect claim and a retaliation claim, and seeks damages and an injunction prohibiting any harassment, intimidation, transfer, or retaliation while this lawsuit is pending.[2] (Compl. at 6.)

## II. STANDARD OF REVIEW

The Court will grant McKnight's Motion for Extension of Time Nunc Pro Tunc[3] and grant him leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient

---

[2] Although McKnight also seeks declaratory relief, declaratory relief is unavailable simply to declare that one's rights have been violated in the past, which is essentially what McKnight requests. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Accordingly, McKnight's request for declaratory relief is improper and will be dismissed.

[3] Upon receiving this case, the Court directed McKnight to submit a certified copy of his prisoner trust fund account statement if he sought to proceed *in forma pauperis*, as required by 28 U.S.C. § 1915(a)(2). (ECF No. 4.) McKnight never received that order and failed to update his address with the Court, so the Court dismissed this case without prejudice for failure to prosecute. (ECF No. 6.) McKnight thereafter returned with his Motion for Extension of Time Nunc Pro Tunc and Prisoner Account Statement. (ECF Nos. 7, 8.) He explained that he had been briefly transferred to the Chester County Jail and, accordingly, did not receive a copy of the Court's order but later became aware of it. Since McKnight has provided the statutorily required paperwork and it is apparent he intends to prosecute this case, the Court will grant his motion.

[4] Because McKnight is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As McKnight is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III.   DISCUSSION

McKnight asserts his constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Additionally, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). A supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other*

4

grounds by *Taylor v. Barkes*, 575 U.S. 822 (2015) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

Official capacity claims against municipal employees are governed by the same standard that applies to direct claims against the municipality, since "official capacity" claims are treated the same as claims against the governmental entity that employs those defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). To plead a § 1983 official capacity/municipal liability claim, a plaintiff must allege that a municipal policy or custom caused the violation of his constitutional rights. *Monell v. N.Y.C. Dept. of Soc. Servs*., 436 U.S. 658, 694 (1978). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). However, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")).

    A.    **Failure to Protect**

While McKnight cites the Eighth Amendment as one of the bases for his claims (*see* Compl. at 6, ¶ 17), it appears that McKnight was a pretrial detainee when the incident he describes in his Complaint occurred, so the Eighth Amendment is not applicable. Instead, McKnight must seek relief under the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor*, 399

5

F.3d 150, 166 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees). However, courts have determined that the rights afforded pretrial detainees under the Due Process Clause are at least as great as those afforded by the Eighth Amendment. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1067 (3d Cir. 1991). Therefore, courts analyzing cases by pretrial detainees apply the same standard of deliberate indifference applied to the Eighth Amendment cases. *Id*.

McKnight alleges that the Defendants were deliberately indifferent to his safety by housing him on an overcrowded unit that was allegedly known for more incidents of violence than the unit where he had previously been housed. Prison officials have a duty to take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). In that regard, prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833). To state a plausible failure to protect claim, McKnight must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton*, 117 F.3d at 746; *see also Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (applying deliberate indifference standard to failure to protect claim asserted by pretrial detainee). Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). McKnight must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id*. at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 125.

McKnight has not alleged a plausible deliberate indifference claim based on the conditions on the unit to which he was moved. His allegations are mostly comprised of speculative or conclusory statements about the unit, *i.e.*, that there is generally an increased likelihood of assaults or violence there. (*See* Compl. at 4-5, ¶¶ 11-12.) These allegations are not supported by specific factual allegations and, further, neither suggest that McKnight himself was likely to be assaulted by another inmate nor that either of the Defendants were aware of any such risk. Such general allegations are insufficient to state a plausible failure to protect claim. *See Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (concluding that "the risk that an inmate with a history of violence might attack another inmate for an unknown reason" was a "speculative risk" insufficient to support a failure to protect claim), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020); *see also Parkell v. Markell*, 622 F. App'x 136, 140 (3d Cir. 2015) (*per curiam*) (affirming dismissal of failure to protect claim based on allegations that overcrowding caused violence among inmates on plaintiff's unit, stating "Parkell does not indicate, for example, how frequently fights over provisions occurred prior to his, how many had resulted in serious injury, and what prison guards' actual response . . . to such fighting consisted of. His complaint therefore does not plausibly suggest that the type of violent dispute causing his injury was so pervasive, injurious, and predictable, and guards' typical responses so ineffectual, that Morgan and Coupe *must have been aware* of a problem merely by virtue of their institutional roles."). The absence of specific factual allegations is also fatal to any claim based on an alleged policy or custom at the Philadelphia Detention Center. Accordingly, the Court will dismiss all of McKnight's deliberate indifference claims. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

7

B.      Retaliation

McKnight also brings retaliation claims based on his allegation that McDowell changed his housing to retaliate against him for having filed grievances against her. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct can establish a causal link between the two. *See Watson*, 834 F.3d at 422.

McKnight's allegations that McDowell changed his housing in retaliation for him having filed grievances are entirely conclusory. Initially, it is unclear that being transferred to the less desirable housing unit constitutes an adverse action sufficient to support a retaliation claim under the circumstances of this case. *See Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (*per curiam*) (prisoner's "mere assertion that Appellees retaliated against him by placing him in a cell with a faulty shower" did not support a retaliation claim); *Verbanik v. Harlow*, 512 F. App'x 120,

8

122 (3d Cir. 2013) (*per curiam*) (summarily affirming dismissal of retaliation claims on the basis that prisoner failed to adequately allege an adverse action based on his housing assignment and transfer "to a less desirous cell for filing a grievance against a defendant"). In any event, McKnight does not provide any facts describing how many grievances he filed against McDowell or the temporal relationship between his filing of grievances and the alleged adverse action taken against him. Nor does he provide any factual details about the grievance he filed that allegedly led to an investigation of McDowell. Further, McKnight does not allege any facts to support a plausible inference that McDowell was aware of McKnight's grievances or that retaliation was a substantial or motivating factor behind the change in housing. Rather, he simply speculates that McDowell harbored animosity toward him and moved him on that basis. These undeveloped allegations are insufficient to support a plausible retaliation claim. *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant McKnight's Motion for Extension of Time Nunc Pro Tunc, grant McKnight leave to proceed *in forma pauperis*, and dismiss his Complaint. McKnight will be given leave to file an amended complaint in the event he can cure the defects in his claims. An order follows, which provides further instruction as to amendment.